UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DEMOND BRANCH,

                    Plaintiff,                              Case No. 1:16-cv-77

v.                                                          Honorable Robert J. Jonker

DONNA HOUTZ et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro

se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state

a claim.

## **Factual Allegations**

Plaintiff Demond Branch presently is incarcerated at the Lakeland Correctional Facility (LCF).  He sues the following LCF officials:  Correctional Officers Donna Houtz and Sean Cline; Inspector Matt Huntley; Assistant Resident Unit Supervisor (ARUS) Grace Paul; and Resident Unit Manager (RUM) R. Ault.

Plaintiff alleges that unnamed individuals made a number of electronic fund transfers to Plaintiff's prisoner trust account between August 3, 2011 and January 26, 2014, which were later determined to be improper.  On August 16, 2014, Defendant Cline wrote multiple notices of intent (NOIs) to conduct an administrative hearing to remove the funds from Plaintiff's trust account. Plaintiff contends that the NOIs issued by Defendant Cline were "fraudulent" (Compl.,  ECF No. 1, PageID.11), because they did not comply with Michigan Department of Corrections, Policy Directive 04.02.105 ¶¶ O and P.[1]

---

[1]Policy Directive 04.02.105 ¶ O prohibits prisoners from receiving funds from the following sources, except as payment for hobbycraft items:

1. Funds known to be from a Department employee unless the employee is a family member of the prisoner and approval is obtained from both Wardens or, if not a CFA institutional employee, the appropriate supervisor and Warden.

2. Funds known to be from or sent on behalf of another prisoner, parolee, or probationer unless the offender is a family member of the prisoner receiving the funds. In such cases, approval must be obtained from both Wardens or, if the offender is not in a CFA institution, the Warden and the Supervisor of the Residential Reentry Treatment Program facility or supervising field agent, as appropriate.

3. Funds known to be from a family member of another prisoner, parolee, or probationer unless the individual sending the funds is a family member of the prisoner receiving the funds.

4. Funds known to be from a volunteer who is not authorized to send funds to the prisoner pursuant to PD 03.02.105 "Volunteer Services and Programs". The Warden shall be advised if such funds are received.

5. Funds known to be from an outreach volunteer. The Warden shall be advised if such funds are received.

On August 21, 2014, Officer Wethy reviewed the NOIs with Plaintiff.  Plaintiff told Wethy that the NOIs had been issued in violation of the prison rules.  Wethy replied that he was merely investigating the NOIs and that Plaintiff should raise his concerns with the hearing officer. On September 16, 2015, Defendant Paul conducted a hearing on the NOIs written by Defendant Cline.  Plaintiff complained to Paul that the procedure was improper under Policy Directive 04.02.105 ¶ P, because the NOIs were not issued until long after the money had been placed in his prison account and spent by him.  He argued that both he and the sender should have received notice and an opportunity to object to the rejection of the funds at the time the funds were received.  He asserted that the policy does not authorize the prison to recover funds that Plaintiff has already spent. Defendant Paul upheld the NOIs, citing MICH. DEP'T OF CORR., Policy Directive 04.02.105, ¶ P, which provides that "[i]f the funds are rejected after transmittal, a hold shall be placed on the funds and the prisoner provided notice of the rejection and, unless waived, a hearing."  (Compl., ECF No. 1, PageID.9.)

---

6.     Funds from an unidentified source (e.g., name of sender not provided; name provided believed not to be that of the sender).

MICH. DEP'T OF CORR., Policy Directive ¶ O.  Policy Directive 04.02.105 ¶ P directs how improper electronic fund transfers made under ¶ O are to be handled:

An electronic fund transfer that is believed to violate Paragraph O of this policy shall be rejected at the institution at which the prisoner is housed. If the funds are rejected prior to being transmitted to the prisoner's trust account, the sender shall be notified of the rejection and the reason for the rejection through the vendor; the vendor will return the transmitted funds to the sender. The sender may appeal the rejection to the Warden. If the funds are rejected after transmittal, a hold shall be placed on the funds and the prisoner provided notice of the rejection and, unless waived, a hearing in the same manner as set forth below for rejected funds received through the mail.

Id.  In the instant case, Plaintiff does not specify which subsection of ¶ O the electronic transfers were alleged to have violated.

Plaintiff alleges that the hearing he received was an inadequate, post-deprivation hearing conducted years after some of the money had been placed in his account.[2]  He argues that Defendants have wrongfully held him responsible for repayment of $1,530.00 that they belatedly concluded was improperly credited to his account over a period of three years.

Plaintiff states that he filed multiple grievances about the NOIs and the resolution of the NOIs.  Defendant Ault allegedly threatened and intimidated Plaintiff and failed to investigate Plaintiff's grievance or comply with prison policy.  Plaintiff alleges that, on April 3, 2015, he began to see funds removed from his prisoner trust account, as the result of the NOIs issued by Defendant Cline.  Plaintiff contends that Defendant Ault's rudeness and failure to investigate were taken in retaliation for filing the grievance.  Plaintiff filed additional grievances about the taking of funds. Defendants Cline, Houtz and Huntley allegedly interfered with Plaintiff's right to petition government by filing grievances when they rejected Plaintiff's grievances as untimely on April 16 and April 24, 2015.  Plaintiff also alleges that, because Defendant Cline was the subject of his first grievance, Cline improperly responded to the grievance.  Plaintiff asserts that Defendants Houtz and Huntley forged an official document by substituting their own signatures for that of Defendant Cline. Plaintiff contends that Defendants effectively admitted that they had forged the document when Inspector Morrison stated in a May 7, 2015 grievance response that Defendant Cline had

---

[2]According to the dates recited in the complaint, although Defendant Cline issued and Officer Wethy reviewed the NOIs in August 2014, Plaintiff did not receive a hearing on the NOIs until more than a year later, on September 16, 2015.  It appears likely, however, that Plaintiff has misstated the date on which he received a hearing, both because he does not complain that he did not receive a timely hearing on the NOIs and because all of his grievances were filed before September 16, 2015.  In fact, Plaintiff quotes a response from the business office that he received on April 8, 2015, which states, "There was a notice of intent and administrative hearing regarding the removal of funds."  (Compl, ECF No. 1, PageID.11.)  Thus, the date of the hearing likely was September 16, 2014, rather than September 16, 2015.  Regardless, any confusion about the date of the hearing is irrelevant to Plaintiff's claim that Defendants violated policy and due process in recouping money from his account that he had received and spent years earlier.

acknowledged rejecting Plaintiff's grievance, but had subsequently removed himself from the grievance process, which Defendant Houtz continued.  In all, Plaintiff reports filing five grievances on September 20, 2014, one grievance on each of four dates:  April 10, 2015, April 16, 2015, April 24, 2015, and September 2, 2015.  He pursued all five grievances through Step III of the grievance process.

Plaintiff alleges that Defendants' actions violated prison policy and due process.  He also alleges that actions taken by Ault, Cline, Houtz and Huntley in denying or rejecting his grievances deprived him of due process, were retaliatory, deprived him of his First Amendment right to petition government, and denied him his right to access the courts.

### Discussion

I.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Taking of trust account funds

Plaintiff alleges that Defendants Cline, Ault, and Paul violated prison policy and the Due Process Clause by taking his prisoner trust account funds to reimburse for monies improperly sent to him and deposited in his account between 2011 and 2014. He alleges that Defendants failed to timely notify the senders that the funds they transferred to his account had been rejected; failed to hold an administrative hearing before the funds were placed in his account; and improperly held a "post-deprivation" hearing, long after the funds had been spent.

To the extent that Plaintiff alleges that Defendants acted in violation of prison policy, he fails to state a constitutional claim. Claims under § 1983 may not be based upon alleged

violations of state law or procedure, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). The failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

To the extent that Plaintiff alleges that he was deprived of due process by the taking of funds from his prison account without appropriate authority, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Plaintiff does not challenge established state procedure or policy. Instead, he contends that Defendants' actions violated MDOC policy. Because Plaintiff's claim is premised

upon allegedly unauthorized acts of state officials in misapplying the policy, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

In any event, it is clear from the allegations of the complaint that Plaintiff received due process of law. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The concept, however, "unlike

some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Due process ordinarily requires notice and an opportunity to be heard before an impartial decisionmaker before a claim becomes final. *Mathews*, 424 U.S. at 332. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Here, Plaintiff received notice and an opportunity to be heard. On August 16, 2014, Defendant Cline provided Plaintiff multiple notices of intent to hold an administrative hearing to remove funds from Plaintiff's trust account because of improper transfers on a series of dates. Officer Werthy met with Plaintiff on August 21, 2014, to investigate the allegations. Defendant Paul held the hearing on either September 16, 2014 or September 16, 2015, and Plaintiff was permitted to present his defense at the hearing. According to Plaintiff's own allegations, Defendant Paul issued a written decision, indicating the reasons for her decision and directing that the funds be returned to the senders at Plaintiff's expense. Plaintiff therefore received notice, an investigation, an opportunity

to be heard and a written decision from an independent decisionmaker stating the reasons for the decision. He therefore received all of the process to which he was entitled.

### B. Grievances

Plaintiff alleges that Defendant Cline was involved in the handling of at least one of his grievances, in violation of prison policy, and that Defendants Houtz and Huntley violated procedures by placing their names on the grievance that Cline had originally handled. He also alleges that Defendant Ault was rude and dismissive and failed to investigate the grievances. In addition, Plaintiff contends that Defendants Ault, Cline, Houtz and Huntley retaliated against him and deprived him of due process in the grievance procedures. Further, he contends that Defendants violated his First Amendment right to petition government for redress of grievances by rejecting his grievances and thereby interfering with his ability to exhaust his administrative remedies before filing a civil rights action.

To the extent that Plaintiff complains that Defendants did not follow MDOC policy in handling his grievances, he fails to state a claim. As previously discussed, a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney*, 501 F.3d at 581 n.2; *Brody*, 250 F.3d at 437; *Smith*, 954 F.2d at 347-48; *Barber*, 953 F.2d at 240.

Moreover, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-

- 10 -

3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' alleged interference with his grievances did not deprive him of due process.

Further, to the extent that Plaintiff alleges that Defendants Ault, Houtz or Huntley failed to supervise Cline or failed to investigate Plaintiff's grievances, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

- 11 -

In addition, Plaintiff fails to allege facts suggesting that he was subjected to retaliation for filing a grievance. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a prison grievance is protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Nevertheless, Plaintiff cannot demonstrate that any Defendant subjected him to adverse action for filing a grievance. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether a defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff alleges that, by rejecting or denying his grievances Defendants interfered with his ability to file a lawsuit, because they prevented him from properly exhausting his administrative remedies. He also alleges that Defendant Ault "threatened and intimidated him to pay the fraudulent NOI written by Defendant Cline." (ECF No. 1, PageID.11.)

- 12 -

Plaintiff's allegations fall far short of demonstrating adverse action.  Rejection of a grievance, however, does not impair a prisoner's right to bring a lawsuit.  *See Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *cf., Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) ("[A]n ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances."); *Jackson v. Madery*, 158 F. App'x 656 (6th Cir. 2005) (placement of modified grievance access does not constitute adverse action).  The exhaustion requirement of the PLRA only mandates exhaustion of available administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  Moreover, the rejection of a grievance is itself appealable to all levels of the grievance process.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ I ("A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy.")   For all these reasons, the mere denial or rejection of a grievance does not amount to adverse action.

Moreover, while a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results), Plaintiff does not allege that Ault made such a specific threat.  Indeed, his allegation against Defendant Ault is wholly conclusory, suggesting that Ault rudely told Plaintiff that he should pay the money back.  Such verbal threats are so *de*

*minimis* that they do not rise to the level of being constitutional violations.  *See Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Finally, Plaintiff wholly fails to demonstrate that Defendants denied him access to the courts for redress of grievances.  It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See  Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the

- 14 -

complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff wholly fails to allege that he suffered actual injury. Although he claims that the rejection of his grievances will undermine his ability to file or sustain a lawsuit, the facts he alleges fail to support that claim. As previously discussed, prisoners may appeal a grievance rejection to all levels of the grievance process. MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ I. Moreover, if any Defendant improperly denied Plaintiff access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See* 42 U.S.C. § 1997e(a).

For all these reasons, Plaintiff's complaints about the handling of his grievances fail to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  _____February 25, 2016_____        /s/ Robert J. Jonker_____
                                             ROBERT J. JONKER
                                             CHIEF UNITED STATES DISTRICT JUDGE